CITY OF NEW YORK et al., Appellants, v VICTORY VAN LINES, INC. et al., Respondents.

Second Department, July 23, 1979

606

APPEARANCES OF COUNSEL

*Allen G. Schwartz, Corporation Counsel (Angelo Aiosa, Francis F. Caputo* and *Jeffrey Schanback* of counsel), for appellants.

*John J. Turvey (Martin Fogelman* of counsel), for respondents.

### OPINION OF THE COURT

MARGETT, J.

In this action to enjoin defendants from storing moving vans and other trucks on the premises of their moving and storage business, plaintiffs appeal from an order which denied their motion for summary judgment and granted defendants' cross motion for summary judgment dismissing the complaint. The ultimate issue is whether the use sought to be enjoined is a valid nonconforming use.

█ The order should be affirmed.

The essential facts are undisputed. In 1925 one Vincent Schnurr constructed a warehouse on the subject property and commenced the operation of a moving and storage company. At the time, the area was zoned unrestricted and Mr. Schnurr's use of the property for a moving and storage business, including the storage of trucks thereon, was a permitted use. Although Mr. Schnurr never applied for a certificate of occupancy when he built the warehouse, he did obtain a permit issued by the Department of Buildings for the construction of said warehouse. In 1931 he obtained a second permit from that department for an extension of the warehouse. During his entire ownership of the subject premises, no violations were ever issued to Schnurr for failure to procure a certificate of occupancy and it was not until the property and the moving and storage business were sold to the current owner in 1956, that a certificate of occupancy was procured.

At the time of the sale to the current owner, Christian Beetschen, the property was zoned "business" and both the

moving company and the storage of trucks incidental thereto were permitted uses in the district. Nevertheless, at the behest of the new owner, Mr. Schnurr obtained a certificate of occupancy for the warehouse.

In 1961 the area was zoned "residential". In such a district, the storage of commercial vehicles, such as trucks, is not allowed as of right. Fifteen years later, in 1976, the instant action was commenced. While conceding that the "warehouse use" is entirely legal, and that the moving and storage company has occupied the premises for more than 50 years, plaintiffs contend that the use of the premises for the storage of trucks is not a valid nonconforming use because a certificate of occupancy was never obtained for such use prior to the 1961 rezoning. In essence, it is claimed by plaintiffs that under section 22 of the pre-1961 Building Zone Resolution, no use could be lawful unless a certificate of occupancy was issued for such use. Current law defines "non-conforming" use as "any *lawful* use" (emphasis supplied) which does not conform to any one or more of the applicable use regulations of the district in which it is located, either on the effective date of the current resolution or as a result of any subsequent amendment thereto (New York City Zoning Resolution, §§ 12-10, 52-01). Thus, plaintiffs contend that because the storage of trucks was "unlawful" at the time of the 1961 rezoning, such storage cannot become a valid nonconforming use.

Although it is generally true that the use of property for a given purpose is illegal absent a certificate of occupancy for such purpose (*Matter of Seidenberg v Burwell,* 235 App Div 745; *People v Lederle,* 206 Misc 244), there is nothing in the City Charter, nor in the Administrative Code of the City of New York, which would put a reasonable man, or even an astute attorney, on notice that a certificate of occupancy would be required in order to park moving vans on the premises of a moving and storage company. Section 22 of the pre-1961 Building Zoning Resolution is simply too general to put a reasonable man on notice that a certificate of occupancy would be required under the circumstances of this case. Although a 1948 regulation of the Department of Buildings required a certificate of occupancy where "vacant land" was to be used for a parking lot, a fair reading of that regulation indicates that it was intended to apply only to commercial parking lots. Not until 1969 was a regulation first enacted which would appear to apply to defendants' situation. But

insofar as the 1969 regulation requires a certificate of occupancy, it is prospective only. Since there was no law which would put a reasonable man on notice, prior to 1969, that a certificate of occupancy was necessary under these circumstances, it would be a denial of due process and an ex post facto taking to grant the injunction sought by plaintiffs.

■ Furthermore, defendants would be entitled to a certificate of occupancy today if they brought a special proceeding to obtain one (see *Matter of Boardwalk & Seashore Corp. v Murdock,* 286 NY 494). In *Boardwalk,* the petitioner had run an outdoor parking lot in Rockaway Beach since about February, 1925. At the time of its establishment, the lot was in a business use district and was a permitted use. Petitioner did not, however, apply for a certificate of occupancy. In 1935 the Building Zone Resolution was changed so that it prohibited the use of premises for commercial outdoor parking of more than five motor vehicles in a business district. Petitioner's use of the premises therefore became "unlawful" because under the original 1916 Building Zone Resolution, only uses existing on July 25, 1916 could be considered nonconforming uses (see *People v Emigrant Ind. Sav. Bank,* 261 App Div 402, 405). As a result of the restrictive wording of the original 1916 Building Zone Resolution, there were at least two successful criminal prosecutions of outdoor parking lot operators who had legally established their lots some time subsequent to 1916, but who became in violation of the law due to the said 1935 amendments of the Building Zone Resolution *(People v Wolfe,* 272 NY 608; *People v Kesbec, Inc.,* 281 NY 785). In 1938 the property of the petitioner in *Boardwalk* was rezoned residential and, as such, "commercial parking use was forbidden even prior to the 1935 amendment" (286 NY, at p 496).

In 1940 petitioner was served with notice that it was in violation of the Building Zone Resolution by operating a parking lot in a residential use district without a certificate of occupancy. Petitioner commenced a special proceeding to compel the issuance of a certificate of occupancy for such use. Special Term ordered that the certificate of occupancy issue, holding that the city was estopped from withholding it. This court affirmed without opinion *(Matter of Boardwalk & Seashore Corp. v Murdock,* 261 App Div 913). The Court of Appeals also affirmed (286 NY 494), but stated that its decisions in *People v Wolfe (supra)* and *People v Kesbec, Inc. (supra)* would have been controlling except for two amend-

ments to the Building Zone Resolution, both made while the appeal was pending. The first of these amendments broadened the definition of nonconforming use by providing that any use "lawfully established subsequent to July 25, 1916" could be continued except as provided in section 21-A. At the time of this amendment in December, 1940, section 21-A did provide that "no premises may be used * * * as a garage for more than five motor vehicles or for the storage or parking of more than five motor vehicles * * * on * * * any portion of a street between two intersecting streets, on which portion there exists an exit from or an entrance to a public school". The prohibition against the use of premises "for the storage or parking of more than five motor vehicles" was deleted by an amendment to the section adopted in January, 1941.

The Court of Appeals stated that by virtue of these amendments, petitioner's continued use of the premises for parking was lawful, "except for the absence of a certificate of occupancy" (*Matter of Boardwalk & Seashore Corp. v Murdock*, 286 NY 494, 497, *supra*). The court concluded (p 499): "The use of the premises for commercial parking of more than five motor vehicles conformed to the provisions of the Building Zone Resolution at the time the use was established and conforms now under the [two afore-mentioned amendments]. Petitioner is entitled to the certificate of occupancy sought and granted below."

It bears repeating that the property in *Boardwalk* was in a residential zone at the time of the Court of Appeals decision and that commercial parking lots were not permitted in such zone. We reiterate that the conclusion is inescapable that on the basis of *Boardwalk,* defendants at bar would be entitled to a certificate of occupancy today if they brought a special proceeding to obtain one. That being the case, it would appear that the failure to secure a certificate of occupancy at a time when the use was a permitted one is a technical irregularity which would not prevent the continuance of an otherwise lawful use.

Indeed, *Boardwalk* would appear to be another in a line of cases which hold that "where the invalidity of the use prior to the effective date of the zoning restriction lies in failure to secure a license * * * such invalidity does not preclude acquisition of a non-conforming use protected as against the operation of the subsequent zoning restriction" (3 Rathkopf, The Law of Zoning and Planning, ch 58, § 4, p 58-17; see *City of*

*Passaic v Reed & Co.,* 70 NJ Super 542 [holding that an industrial plant could continue in business despite its failure to have gotten a certificate of occupancy—the court stated that it would "not permit slavish adherence to form, in this case the obtaining of a certificate of occupancy, to override the merits of the substance of the factual setting"]).

■ There is no merit, under the facts of this case, to plaintiffs' claim that where there is an insubstantial investment in a nonconforming use, such use can be enjoined. The "warehouse use" herein cannot be neatly cleaved from the "storage use", and the record indicates that defendants have a substantial investment in the warehouse structure. *Matter of Harbison v City of Buffalo* (4 NY2d 553) involved an ordinance which specifically disallowed certain nonconforming uses in a particular zone and required that such uses be phased out within a certain period of time. There is no such ordinance applicable in the instant case.

■ We would add that there are no allegations of nuisance in the complaint. Nor is there any claim that defendants enlarged a nonconforming use. The complaint relates solely to lot number 237 and not to adjoining lot number 241. As for plaintiffs' claim that defendants are in violation of certain retroactive provisions of the aforesaid 1969 regulations, plaintiffs' remedy is to charge defendants with such violation; it is not to put them out of business.

Suozzi, J. P., Cohalan and Martuscello, JJ., concur.

Order of the Supreme Court, Richmond County, dated May 8, 1978, affirmed, with $50 costs and disbursements.